UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

VFS LEASING CO.,

Plaintiff, Counter-Defendant, Third-Party Defendant,

v.

J&L TRUCKING, INC., *et al.*,

Defendants, Third-Party Plaintiffs, Counter-Claimants,

v.

MACK TRUCKS, INC., *et al.*,
Third-Party Defendants.

CASE NO. 1:09-CV-2942

OPINION & ORDER
[Resolving Doc. Nos. 36, 45]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this breach of contract and warranty case, the parties file dueling motions for summary judgment on Plaintiff VFS Leasing's breach of lease and breach of personal guaranty claims against Defendants J&L Trucking and Jerry Hackney. VFS argues that because the Defendants defaulted on payment obligations under their Lease Agreement, VFS is entitled to a deficiency judgment against J&L, and that Hackney is personally liable for the deficiency because he guaranteed J&L would pay the Lease Agreement. [Doc. 36.] The Defendants cross-move for summary judgment, saying that a deficiency judgment is improper because VFS repossessed and sold the trucks in a commercially unreasonable manner. [Doc. 45.]

VFS and Third-Party Defendant Mack Financial Services also move for summary judgment on the Defendants' counterclaims and third-party claims against them for breach of warranty and tortious breach of fiduciary duty. [Doc. 36.] VFS says that the Agreement disclaimed all warranties and that the Defendants cannot maintain a claim in tort. Mack Financial adds that the Defendants cannot maintain a breach of warranty claim against it because it is not in privity with the Defendants. [Doc. 36 at 11-12.] The Defendants oppose this motion.[1/] [Doc. 45.]

In resolving these summary judgment motions, the Court must consider the extent of: (1) J&L Trucking's obligation to pay under the lease and Hackney's obligation to personally guarantee payment; (2) VFS's obligation to conduct a commercially reasonable sale of the trucks; and (3) any implied or express warranty made by VFS or Mack Financial to the Defendants regarding the trucks' condition. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** VFS and Mack Financial's motion for summary judgment. The Court **DENIES** the Defendants' motion for summary judgment.

## I. Background

This case stems from J&L's lease of four Mack Trucks from VFS. On April 4, 2008, after negotiations between J&L President Hackney and R&R Truck Sales, R&R Truck Sales sold four Mack Trucks to VFS, who in turn leased the trucks to J&L. The trucks were delivered to J&L that day. J&L then signed a Master Lease Agreement, which obligated J&L to make 72 monthly lease

---

[1/]The Defendants title their motion as one for summary judgment "against Plaintiff's claims" as well as one in opposition to VFS's motion for summary judgment. [Doc. 45.] Though most of their arguments as to VFS's claims urge that VFS is not entitled to a deficiency judgment as a matter of law, the Court construes these arguments also as meant to support summary judgment in favor of the Defendants. As to the Defendants' counterclaims and third-party claims against VFS and Mack Financial, the Defendants title their motion only one "in Opposition to Plaintiff VFS Leasing Co. and Third-Party Defendant Mack Financial Services' Motion for Summary Judgment" and thus do not separately move for summary judgment in their favor. [Doc. 45 at 1.]

payments of $6,798.48 to VFS, from April 4, 2008 to April 4, 2014. [Doc. 36-1 at 8.] The Lease Agreement stated, in part, that:

> Upon completion of the delivery of all the Equipment described on a Schedule, Lessee shall inspect such Equipment and, if in good order and in conformance with any applicable purchase order or supply contract, Lessee will accept delivery of the Equipment on behalf of the Lessor, and execute and deliver the applicable Schedule.

[Doc. 36-1 at 4.] The Agreement also included a warranty waiver, noting in bold and all-capital letters that VFS,

> not being the manufacturer, supplier, or vendor of the equipment makes no warranty or representation, express or implied, as to any matter whatsoever, including the value, condition, quality, material, or design of any equipment, or the merchantability or fitness or suitability of any equipment for any purpose and, as between Lessor and Lessee, Lessee leases the equipment as-is, where-is and with all faults. Lessee acknowledges that Lessee has selected the equipment based on Lessee's own judgment and has not relied on any statements or representation of Lessor.

[Doc. 36-1 at 5.] Hackney signed a separate guaranty of payment agreement, personally guarantying J&L's timely performance under the Agreement. [Doc. 36-1 at 11.]

J&L and Hackney claim that less than two months after signing the lease and guaranty, the trucks started to malfunction and would abruptly shut down. [Doc. 29; Doc. 29-1.] The Defendants say the trucks were constantly in need of repair and were frequently out of service. [Doc. 29-1 at 1.] About six months after leasing the trucks, J&L made its first late payment. [Doc. 36-2 at 35.] On April 29, 2009, J&L continued to be in arrears and VFS repossessed the four trucks. [Doc. 36-1 at 2.]

After VFS repossessed the trucks, Mack Financial Services—a company, neither owned nor controlled by Mack Trucks, that serviced the Defendants' lease account for VFS, [Doc. 48-2 at 1]—sent a "Notice of Sale" to J&L and Hackney informing them that the trucks would be sold at a

private sale after May 19, 2009. [Doc. 48-1 at 4.] The notice also informed the Defendants that they could redeem the trucks by paying the amount past due ($361,892.92) at any point before the sale. [Doc. 48-1 at 4.]

The Defendants did not redeem the trucks, and on August 18, 2009, VFS sold the trucks on its remarketing website, which allowed dealers to view and bid on the trucks. [Doc. 48-2 at 2.] The trucks were sold to the highest bidders for $58,000 each, for a total of $232,000. [Doc. 48-2 at 2.]

VFS then sued J&L, alleging that J&L breached the Lease Agreement by failing to make its monthly payments. It also sued Hackney for breach of his personal guaranty, seeking the remaining balance on the deficiency plus interest. [Doc. 1.] J&L and Hackney brought breach of warranty and tortious breach of fiduciary duty counterclaims and third-party claims against VFS, Mack Financial, Mack Trucks, and R&R Trucks. [Doc. 29.]

VFS and Mack Financial now move for summary judgment on their claims against Defendants J&L Trucking and Hackney as well as on the Defendants' counterclaims. [Doc. 36.] The Defendants oppose the motions, and file their own motion for summary judgment on VFS's claims. [Doc. 45; Doc. 49.]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a grant of summary judgment is proper if "the movant shows there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. 56(a). The moving party bears the initial burden to show the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004). This burden is met simply by showing the court that

there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, the Court "considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party." *Lenscrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005) (citations omitted). Ultimately, the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale*, 361 F.3d at 301.

## III. Analysis

### *A. Standing*

As a preliminary matter, the Court address whether Defendant Hackney, as J&L's owner and guarantor of its debts, has standing to bring his breach of warranty and tort claims. The Court finds that Hackney does not have standing to bring either claim.

Though the parties themselves do not challenge Hackney's standing, because the issue of standing goes to this Court's subject matter jurisdiction, it may be raised *sua sponte*. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007). Standing is "the threshold question in every federal case." *Warth v. Seldin*, 244 U.S. 490, 498 (1975). "To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal

conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)). "Generally, a party has no standing to assert the rights of third persons." *Quarles v. City of East Cleveland*, 202 F.3d 269, 1999 WL 1336112, at *2 (6th Cir. 1999) (per curiam) (table) (internal quotation marks omitted).

First, Hackney's position as owner or President of J&L does not give him standing to sue for alleged harms suffered by J&L alone. An individual does not have standing to sue in his own name for harm done to a corporation "solely on the basis of his status as the sole shareholder of the corporation." *Quarles*, 1999 WL 1336112, at *3 (quoting *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 602-03 (6th Cir.1988)). Moreover, one of several shareholders of a corporation may only have standing to sue where he "'suffers an injury separate and distinct from that suffered by other shareholders,' or the corporation as an entity . . . ." *Id.* (quoting *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 315 (6th Cir. 1987), *modified at* 933 F.2d 400 (6th Cir. 1991)). Regardless of whether Hackney is J&L's sole shareholder or one of several, he does not claim that he suffered an injury distinct from any injury suffered by J&L as a business entity or from any other J&L shareholder.

Nor does Hackney have standing as the guarantor of J&L's debts. "[I]n order to obtain standing to assert a claim, a guarantor's injury must not stem from the harm done to the corporation. Instead, any redressable injury must flow from individualized harm done to the plaintiff, separate from any claims that the corporation may assert." *Id.* at *4. Again, Hackney's claims are not distinct

from any claim J&L may assert: he alleges identical harms and brings identical claims.

Accordingly, Hackney does not have standing, by virtue of his position in J&L or as the guarantor of J&L's debts, to bring his breach of warranty and tort claims.

*B. Choice of Law*

In addition, the parties voice some disagreement whether Ohio or North Carolina law governs the instant claims. The Lease Agreement states that it "shall be governed by the substantive . . . laws of the State of North Carolina." [Doc. 45-9 at 5.] VFS and Mack Financial argue that North Carolina law therefore governs all disputes arising under the Agreement.[2/] The Defendants do not directly dispute this choice of law, but they premise their arguments on both Ohio and North Carolina law. The Court thus clarifies the state law applicable to each claim.

The choice of law rules of Ohio, the forum state, govern this Court's determination whether to apply the Lease Agreement's choice of law provision and to which claims. *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Under these rules, the parties' contractual choice of law provision may be applied unless either (1) North Carolina "has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice;" or (2) applying the North Carolina law would run contrary to a fundamental policy of the state (Ohio) whose law would otherwise govern the issue, and "which has a materially greater interest than the chosen state" in the issue. *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987) (citing *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, 686 (Ohio 1983) and adopting Restatement

---

[2/] Though there may be some question whether Ohio or North Carolina law applies to the Defendants' claims against Mack Financial, who was not a party to the Agreement, the Court need not resolve this issue because, as later explained, summary judgment for Mack Financial on the Defendants' breach of warranty claims is appropriate under Ohio and North Carolina law.

(Second) of Conflicts of Laws § 187(2)).

Finding no evidence that applying North Carolina law here would be adverse to fundamental Ohio public policy or that Ohio has a materially greater interest in this suit, the Court finds the contract choice of law provision that chooses North Carolina law should apply to VFS's breach of lease and J&L's breach of warranty claims. In addition, because agreed choice of law provisions also govern tort claims directly related to the performance and underlying negotiation of that contract, North Carolina law applies to J&L's tort claim, as well. *See Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1139-40 (6th Cir. 1993) (holding choice of law provision applicable to fraud and misrepresentation claims where plaintiffs did not assert "claims that arose incidentally of the contractual relationship" but rather claims that "put the validity of the contract in issue.").

*C. Breach of Lease and Breach of Warranty Claims*

VFS moves for summary judgment on its breach of lease and personal guaranty claims against the Defendants. With this motion, VFS argues that J&L stopped making the monthly lease payments required under the Lease Agreement, thereby breaching the terms of the Agreement. VFS says that J&L is liable for the deficiency balance and that Hackney, signed a guaranty of payment agreement and, is personally liable for the deficiency. [Doc. 36 at 9-10.]

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Andresen v. Progress Energy, Inc.*, 696 S.E.2d 159, 162 (N.C. Ct. App. 2010) (citing *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000)). The Defendants do not dispute they had contracts with VFS and do not dispute that Defendant J&L failed to pay the full amount under the terms of the lease. Instead, the Defendants first argue that a deficiency judgment is inappropriate because VFS repossessed the trucks and sold them "without notice to the Defendants

and in a commercially unreasonable manner." [Doc. 45 at 2.] Second, the Defendants say that VFS earlier breached warranties, arguably relieving the Defendants from liability under the Lease Agreement. [Doc. 45 at 13.]

1. Commercial Reasonableness of Sale

First, the Defendants say that Plaintiff VFS cannot recover a deficiency judgment, because VFS failed to comply with Uniform Commercial Code ("UCC") Article 9 when it repossessed and sold the trucks in an allegedly commercially unreasonable manner. But because the Lease Agreement is a true finance lease rather than a security interest, and is thus governed by UCC Article 2A rather than Article 9, no commercial reasonableness requirement applies to the truck sale and the Defendants' argument fails.

In deciding whether the commercial reasonableness of the August 18, 2009, private sale is important, this Court needs to consider whether the sale was controlled under Article 2A or Article 9. Article 9 governs security interests, and provides that after default, a secured party may sell any or all of the secured collateral following a "commercially reasonable" preparation or processing. Conversely, Article 2A governs "any transaction, regardless of form, that creates a lease," N.C.G.S.A. § 25-2A-102, including finance leases, N.C.G.S.A. § 25-2A-103. Article 2A has no commercial reasonableness requirement for the sale of leased goods after breach of the lease and repossession. *See* N.C.G.S.A. § 25-2A-527(3) ("If the lessor's disposition . . . is by sale or otherwise, the lessor may recover from the lessee as if the lessor had elected not to dispose of the goods . . . .").

A lease creates a security interest that is controlled by Article 9 instead of Article 2A if the lessee's right to possess and use the goods during the lease, cannot be terminated by the lessee, and

> (1) The original term of the lease is equal to or greater than the remaining economic life of the goods; (2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods; (3) The lessee has an option to renew the lease for the remaining economic life of the goods or for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or (4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

N.C.G.S.A. § 25-1-203.

None of these qualifications apply to VFS and J&L's Lease Agreement. The Agreement states that it "is a 'finance lease' as defined in Section 2A-103 of the Uniform Commercial Code . . . ." [Doc. 1-1 at 1.] And, though the Agreement gave J&L an option to purchase the trucks at the end of the lease for 8.84% of what VFS originally paid for them, [Doc. 36-1 at 9], this non-binding option to own the trucks does not itself create a security interest. This option to purchase the goods does, however, suggests that the trucks have an economic life beyond the lease—and thus that the lease is a true lease governed by Article 2A. *See* N.C.G.S.A. § 25-1-203(1). Moreover, J&L does not have the option to buy the trucks until the end of the lease and must pay more than nominal consideration (8.84% of the original purchase price or roughly $36,000 for all four trucks) if it decides to exercise this option.[3/] *See* N.C.G.S.A. § 25-1-203(2)–(4).

[3/] "Additional consideration is not nominal if . . . when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed." N.C.G.S.A. § 25-1-201(37)(c)(i). In determining whether the J&L has the option to purchase the trucks at a nominal price, the Court looks to the "reasonably predictable fair market value of the goods at the time the option is to be performed." N.C.G.S.A. § 25-1-201(37)(b). Here, the parties present no direct evidence of the expected fair market value of the trucks at the termination of the lease (on April 4, 2014). In the original lease schedule, however, the parties agreed to stipulated loss factors—that is, the value that Defendant J&L would owe Plaintiff VFS Leasing if the trucks were rendered unusable while in J&L's possession. [Doc. 36-1 at 6.] In the absence of any evidence as to the projected fair market value of the trucks at the end of the lease, the Court believes this stipulated and agreed loss factor offers some proxy for that fair market value. The parties present stipulated loss factors for each month from April 4, 2008 to August 04, 2013: over this period, the stipulated loss factor decreased from 93.54% to 19.37% of the original purchase price, or approximately 1.15% per month. [Doc. 36-1 at 10.] At this rate of decline, the stipulated loss factor would be approximately 7.78% at the end of the lease term on April 4, 2014. J&L's option to purchase the trucks at 8.84% of VFS's original purchase price is, therefore, very close to the value the parties assigned the trucks. The Court accordingly finds this buyout price is not nominal.

Accordingly, the Lease Agreement does not satisfy the requirements of a security interest, and Article 9 (including its commercial reasonableness component) is not applicable here.

Second, the Defendants argue that Plaintiff VFS breached implied and express warranties in the Lease Agreement. Defendants say that the claimed breaches of implied and express warranties allows J&L to properly revoke acceptance of the trucks and relieve Defendants of liability for any failure to pay. [Doc. 45 at 15.] *See* N.C.G.S.A. § 25-2A-517(2) ("[I]n the case of a finance lease that is not a consumer lease, a lessee may revoke acceptance of a lot or commercial unit if the lessor defaults under the lease contract and the default substantially impairs the value of that lot or commercial unit to the lessee."). Though the Court finds that VFS disclaimed any *implied* warranties in the Lease Agreement, whether VFS made and breached an *express* warranty raises a question of material fact that makes summary judgment on the parties' breach of lease and warranty claims inappropriate.

As to any implied warranty, the Lease Agreement states that VFS "makes no warranty or representation, express or implied, as to any matter whatsoever, including the value, condition quality . . . or suitability of any equipment for any purpose." [Doc. 1-1 at 2.] The Agreement also states that VFS "leases equipment as-is, where-is and with all faults." [Doc. 1-1 at 2.] Together, these statements, included in the Agreement in bold font and all-capital letters, conspicuously disclaim any implied warranty. *See* N.C.G.S.A. § 25-2A-214 (statement in writing such as "[t]here is no warranty that the goods will be fit for a particular purpose" sufficient to disclaim implied warranties if conspicuous); N.C.G.S.A. § 25-2A-214(3)(a) ("[U]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' or 'with all faults' . . . if in writing and conspicuous."); N.C.G.S.A. § 25-1-201(10) (defining "conspicuous" as "so written that a reasonable

person against whom it is to operate ought to have noticed it . . . .").

However, whether VFS created an express warranty in the Lease Agreement is a question of material fact that precludes summary judgment for either VFS or the Defendants. *Riley v. Ken Wilson Ford, Inc.*, 426 S.E.2d 717, 720-21 (N.C. Ct. App. 1993) ("Whether the parties have actually created an express warranty is a question of fact."). An express warranty is created by "any affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain" or "any description of the goods which is made part of the basis of the bargain." N.C.G.S.A. §§ 25-2A-210(1)(a), 210(1)(b). Any basic obligation created by such affirmation of fact or promise cannot be retracted, even by language purporting to disclaim all express warranties. *Muther-Ballenger v. Griffin Electronic Consultants, Inc.*, 397 S.E.2d 247, 249 (N.C. Ct. App. 1990) (citing Comment, N.C.G.S.A. § 25-2-313 ("A clause generally disclaiming 'all warranties, express or implied' cannot reduce the seller's obligations with respect to such description . . . .")).

Here, Defendant J&L argues that the VFS made affirmation in the Agreement by stating that J&L "shall inspect" the trucks "and, if in good order and in conformance with any applicable purchase order or supply contract, [J&L] will accept delivery" of the trucks. [Doc. 1-1 at 1; Doc. 36-1 at 4.]

This language could arguably be an "affirmation of fact or promise" that the trucks would be "in good order and in conformance with any applicable purchase order or supply contract." If J&L indeed relied on such description when entering the Lease Agreement with VFS, or if the description otherwise became part of the basis of the bargain between J&L and VFS, the language could be an express warranty that VFS breached. *See Pake v. Byrd*, 286 S.E.2d 588, 589 (N.C. Ct.

App. 1993) ("Neither the formal words of an express warranty nor the seller's intent to afford such a warranty is necessary . . . . The single most important decision to make is whether the seller's statements were so regarded by the buyer as part of his reason for purchasing the goods." (citations and quotation omitted)). Conversely, a reasonable fact finder might find the language should be construed as simply an instruction to J&L to inspect and determine if the trucks are "in good order" before accepting the goods. If so, and such language was not made part of the basis of the bargain between VFS and J&L, the language would not constitute an express warranty.

The parties present no conclusive evidence of the extent to which the Agreement's "in good order" language was part of J&L's reasons for leasing the trucks. Thus whether the Agreement language was, as J&L argues, a promise or description of the goods made part of the basis of the bargain—and thus an express warranty as to the conditions of the trucks—or whether it was merely an instruction for J&L to inspect the trucks before accepting them, as VFS contends, presents a genuine issue of fact that precludes summary judgment for either party. *See Muther-Ballenger*, 397 S.E.2d at 251 (summary judgment precluded by material issue of fact regarding express warranty).

Furthermore, because there is a genuine issue of material fact as to whether VFS breached any express warranty to J&L, there is also a genuine issue of material fact as to whether: (1) whether J&L properly revoked its acceptance of the trucks after VFS's breach of warranty, or whether J&L breached the lease by failing to make payments and improperly attempting to revoke acceptance; and (2) whether Hackney may be held personally liable for any breach of the Lease Agreement. Accordingly, the Court denies the parties' summary judgment motions as to J&L's breach of warranty claim against VFS and as to VFS's breach of contract and personal guaranty claims against J&L and Hackney.

*C. Claims against Mack Financial*

Third-Party Defendant Mack Financial also moves for summary judgment on J&L's breach of warranty claim. Summary judgment is appropriate on this claim for two reasons. First, as to any implied warranty, the parties have presented no evidence that J&L was in privity of contract with Mack Financial. In fact, J&L's first contact with Mack Financial came well after J&L signed the lease and accepted delivery of the trucks. [Doc. 36-2 at 35.] Without privity of contract, J&L cannot maintain a breach of implied warranty claim against Mack Financial under either Ohio or North Carolina law. *Curl v. Volkswagen of Am.*, 871 N.E.2d 1141 (Ohio 2007); *Nicholson v. Am. Safety Util. Corp.*, 476 S.E.2d at 678 (N.C. Ct. App. 1996).

Second, though a breach of express warranty claim can exist in the absence of privity of contract, *Crews v. W.A. Brown & Son, Inc.*, 416 S.E.2d 924, 929 (N.C. Ct. App. 1992), J&L points to no affirmation or description of the goods that could constitute an express warranty from Mack Financial. Particularly considering that J&L first contacted Mack Financial only after delivery of the trucks, the Court finds no evidence that Mack Financial made (or breached) any express warranty to J&L regarding the trucks' condition. Accordingly, the Court grants summary judgment to Mack Financial on J&L's third-party breach of warranty claims against it.

*D. Tort Claims*

Finally, VFS and Mack Financial move for summary judgment on J&L's claim for "tortious breach of fiduciary duty and bad faith malicious misconduct by conspiring associated actors and fiduciary to prevent attainment of warranties and warranted performance and to cause an aggravation of damages to J&L Trucking, Inc. and Jerry Hackney." [Doc. 29 at 9.]

Under North Carolina and Ohio law, however, the "economic loss rule" precludes such tort

actions that are essentially premised in the law of contracts. "A tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract." *Spillman v. American Homes of Mocksville, Inc.*, 422 S.E.2d 740, 741-42 (N.C. Ct. App. 1992); *see also* *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005). Here, J&L claims only monetary damages resulting from VFS and Mack Financial's alleged breach of warranty. [Doc. 45 at 19.] J&L's "tortious breach" claim thus falls within the scope of the "economic loss rule" and cannot be maintained as a separate claim sounding in tort law.[4/] Accordingly, the Court grants summary judgment to VFS and Mack Financial on this claim.

**IV. Conclusion**

For the foregoing reasons, the Court first **DISMISSES** Defendant Hackney's breach of warranty and tort claims against VFS and Mack Financial for lack of standing. The Court **DENIES** VFS's motion for summary judgment on its breach of lease and breach of personal guaranty claims; the Court also **DENIES** the Defendants' motion for summary judgment on those claims.

The Court further **DENIES** VFS's motion for summary judgment on J&L's breach of warranty claim, and **GRANTS** VFS's motion for summary judgment on J&L's tortious breach of fiduciary duty claim.

Finally, the Court **GRANTS** Mack Financial's motion for summary judgment on J&L's breach of warranty and tortious breach of fiduciary duty claims.

[4/] None of the exception to this rule recognized under North Carolina or Ohio law apply here. *Kaleel Builders, Inc. v. Ashby*, 587 S.E.2d 470, 476 n.1 (N.C. Ct. App. 2003); *see also* *Corporex Dev. & Constr. Mgt.*, 835 N.E.2d at 704.

IT IS SO ORDERED.

Dated: August 4, 2011

*s/ James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE